F I L E D
DISTRICT COURT
Custer County, Okla.

FEB 1 4 2013

STACI HUNTER
COURT CLERK

## IN THE DISTRICT COURT IN AND FOR CUSTER COUNTY

### STATE OF OKLAHOMA

| | |
|---|---|
| MARY LEATA PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CJ-2013-14 |
| | ) |
| REASSURE AMERICA LIFE INSURANCE COMPANY, | ) |
| JACKSON NATIONAL LIFE INSURANCE COMPANY f.k.a. REASSURE AMERICA LIFE INSURANCE COMPANY f.k.a. VALLEY FORGE LIFE INSURANCE COMPANY f.k.a. SOUTHWESTERN LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### P E T I T I O N

COMES NOW the Plaintiff, Mary Leata Phillips, for her cause of action against the above-named Defendants. Plaintiff alleges and states the following:

#### I. Jurisdiction, Venue, and Parties

1.    The Court has jurisdiction over Defendants, nonresidents, because Defendants purposefully availed themselves of the privileges and benefits of conducting business in Oklahoma by engaging in business in Oklahoma–specifically that Defendants executed a life insurance policy with Plaintiff, an Oklahoma resident. The policy was to be performed in whole or in part in Oklahoma by all parties.

2.    Venue is proper in Custer County under Oklahoma Statutes, Title 12, Section 137,

1

because Defendants are foreign insurance companies; an agent working in Custer County sold the insurance policy in question; and Plaintiff is a resident of Custer County.

## II. Factual Background

3.      On January 2, 1961, Hoyt Ray Phillips ("Hoyt Phillips"), husband of Plaintiff Mary Phillips, purchased a $5,000.00 whole life insurance policy ("1961 Policy") from Southwestern Life Insurance Company's ("Southwestern") local agent, Glenn Shaw. The 1961 Policy insured the life of Hoyt Phillips, with Mary Phillips as the beneficiary. The 1961 Policy was executed in Arapaho, Oklahoma.

4.      On October 28, 1971, Hoyt Phillips purchased a second $5,000.00 whole life insurance policy ("1971 Policy") from Southwestern's agent, Glenn Shaw. The 1971 Policy insured the life of Hoyt Phillips, with Mary Phillips as beneficiary. It too was executed in Arapaho, Oklahoma.

5.      In 1975, Hoyt and Mary Phillips purchased a house located at 1018 W. Main St., Arapaho, Oklahoma 73620. At the time, the Phillips used a Post Office Box to receive mail because this house was not on a postal route.

6.      Hoyt Phillips contracted with Defendants to make all premium payments by automatic withdrawal from his account at Custer County State Bank (now Oklahoma Bank & Trust), Arapaho, Oklahoma ("OB&T Checking Account").

7.      On information and belief, Hoyt Phillips exchanged the 1961 Policy and 1971 Policy on May 2, 1988 for a $35,000 Universal Life Insurance policy, ("1988 Policy") with Southwestern's local agent, Julia Shaw. Said 1988 Policy insured the life of Hoyt Phillips, with Mary Phillips as beneficiary. It too was executed in Arapaho, Oklahoma. The 1988 Policy had a

rider on the life of Mary Phillips for $10,000.00. The 1988 Policy is attached as Exhibit A.

8.     The 1988 Policy listed Hoyt and Mary Phillips' address as P.O. Box 236, Arapaho, Oklahoma ("P.O. Box").

9.     Defendants continued to withdraw premiums, without any further action required by Hoyt Phillips, from the OB&T Checking Account. These withdrawals continued for the next twenty-three (23) years.

10.    On or about 2000, the local postal worker informed the Phillips that their house had been placed on the mail route. The Phillips cancelled the P.O. Box and began receiving mail at their home address of 1018 Main St., Arapaho, Oklahoma.

11.    Over the next decade, Defendants continued to withdraw premium payments from the OB&T Checking Account. During some months, Defendants deducted multiple payments. At no time did Defendants request permission before changing the frequency of withdrawals.

12.    On information and belief, Southwestern merged into Valley Forge Life Insurance Company on December 28, 2006.

13.    On information and belief, Valley Forge Life Insurance Company became Reassure America Life Insurance Company ("Reassure").

14.    Through 2009, Defendants mailed annual statements to the Phillips at their P.O. Box. However, the Phillips received these statements at their home mailbox as forwarded mail.

15.    On June 18, 2010, Defendants mailed the Phillips an annual statement. This statement was addressed to the P.O. Box and was returned to Defendants stamped "Return to Sender, Not Deliverable as Addressed, Unable to Forward." From this point onward, Defendants had actual knowledge that the address they were using was incorrect.

3

16.     Defendants continued to withdraw premium payments.

17.     In May 2011, Hoyt Phillips was diagnosed with stage IV cancer.

18.     On June 16, 2011, Defendants claim to have mailed Hoyt Phillips an annual statement, addressed to the P.O. Box. This statement was returned to Defendants marked "Return to Sender, Vacant, Unable to Forward."

19.     Hoyt Phillips did not receive this statement.

20.     On August 12, 2011, Defendants claim to have mailed Hoyt Phillips a letter, addressed to the P.O. Box, stating that an increased premium on the 1988 Policy must be paid on or before September 16, 2011. This letter was returned to Defendants, undelivered and marked "Return to Sender, Vacant, Unable to Forward."

21.     Hoyt Phillips did not receive this letter.

22.     Defendants had actual notice that Hoyt Phillips did not receive this letter.

23.     On August 22, 2011, Defendants drafted a premium payment from the OB&T Checking Account.

24.     In September 2011, despite having made withdraws for more than twenty-three years, Defendants unilaterally chose not withdrawal either the original premium or the increased premium.

25.     During all of September 2011, sufficient funds were available in the OB&T Checking Account to cover both the original premium and the increased premium. At no point did Defendants ever attempt to draft the higher premium.

26.     Hoyt Phillips received no notice of Defendants' intent to cease automatic withdrawals.

4

27.     On information and belief, Defendants sent no notice of its intent to cease withdrawals.

28.     On September 19, 2011, Defendants claim to have mailed Hoyt Phillips a letter of termination of the 1988 Policy for failure to pay the increased premium. Said letter was mailed to the P.O. Box and returned to Defendants, stamped "Return to Sender, Vacant, Unable to Forward."

29.     Hoyt Phillips did not receive this letter.

30.     Defendants had actual notice that the Hoyt Phillips did not receive this letter.

31.     On June 28, 2012, Hoyt Phillips died of esophageal cancer.

32.     Upon the death of her husband, Mary Phillips notified Defendants and initiated a claim on the 1988 Policy.

33.     Defendants denied Mary Phillips' claim and informed her that the 1988 Policy had been terminated on September 17, 2011 for failure to pay the premium.

34.     On August 24, 2012, Mary Phillips sent a letter to Defendants requesting information as to: (1) why the 1988 Policy was cancelled without adequate notice to the Insured; and (2) why the premium amount due was not withdrawn in September 2011, as had all previous premiums.

35.     On August 31, 2012, Defendants sent a one-sentence letter to Mary Phillips stating that it was "reviewing the policy."

36.     On September 7, 2012, Mary Phillips telephoned Defendants to request the same information as requested in the August 24 Letter.

37.     On September 25, 2012, Defendants contacted Mary Phillips' counsel to state that

Defendants were still "reviewing the policy."  No other information was provided.

38.     On October 10, 2012, Reassure representative Jim MacDonald stated that Defendants had unsuccessfully attempted to find the Phillips' correct address by using: (1) the telephone pages; (2) an undisclosed software program; and (3) the Internet. Mr. MacDonald did not provide any information as to why the premium payment was not drafted from the Phillips' checking account in September 2011.

39.     By 2005 the local telephone book had only one listing for "Hoyt Phillips" and this listing referred to the Insured, providing the correct address.

40.     At all relevant times, Oklahoma Bank & Trust had the Phillips' correct address on file.

41.     The first result of a Google search for "Hoyt Phillips Arapaho, Oklahoma" yields the Insured and his correct address.

42.     On October 19, 2012, Defendants faxed a letter to Mary Phillips stating that the 1988 Policy required written authorization by the Insured before Defendants would be able to change the premium drafted.

43.     The 1988 Policy makes no mention whatsoever of premiums made by automatic draft. The 1988 Policy does not address how premiums were to be paid. In fact, the 1988 Policy specifically states that Defendants can change the premium amount due, and nowhere does it require written authorization by the Insured.

44.     On November 6, 2012, Mary Phillips sent a letter to Defendants requesting documentation supporting: (1) Defendants's attempted search for the Phillips' correct address; and (2) Defendants's claim that the 1988 Policy prohibited Defendants from drafting the

premium in September 2011.

45.     On November 26, 2012, Defendants sent a letter "declining the administrative burden of locating and providing [Mary Phillips] with the information [she] requested in [her] November 6, 2012 correspondence."

46.     On information and belief, Reassure merged into Jackson National Life Insurance Company on December 31, 2012.

### III. Count I – Breach of Contract

#### A. Defendants Breached the 1988 Policy by Unilaterally Ceasing Automatic Drafts.

1.     Defendants were contractually bound to withdraw premium payments from the OB&T Checking Account.

2.     Defendants' failure to withdraw the premium in September 2011 constitutes a breach of contract.

3.     Alternatively, by drafting premium payments from the OB&T Checking Account for the entire life of the 1988 Policy, Defendants assumed the duty to continue drafting the premiums as long as premiums were due and sufficient funds were available.

4.     In September 2011, a premium payment was due and funds were available; however, Defendants failed to draft the premium. This failure constitutes a breach of contract.

#### B. Defendants Breached the 1988 Policy by Attempting to Cancel the Policy Without Providing the Insured with Adequate Notice.

5.     The 1988 Policy imposes upon Defendants the obligation to use reasonable means to locate the insured's correct address where Defendants have actual knowledge that the address

7

it has on file is incorrect.

6.      Alternatively, Defendants assumed the duty to locate the Phillips' correct address.

7.      Defendants failed to use reasonable means to locate the Phillips' correct address.

8.      Defendants breached the 1988 Policy by failing to provide the Phillips' with adequate notice of Defendants' intent to cancel the 1988 Policy.

**C. Defendants Breached the 1988 Policy by Failing to Pay the Required Death Benefits.**

9.      Defendants' attempted cancellation of the 1988 Policy was ineffective and the Policy was in full force and effect upon the death of the insured.

10.     Defendants breached the 1988 Policy by failing to pay the policy benefits upon the death of Hoyt Phillips.


### IV. Count II - Breach of the Duty of Good Faith and Fair Dealing

11.     Oklahoma law requires that a life insurance company deal with its insured fairly and in good faith.

12.     Defendants had a duty to draft premium payments due.

13.     Defendants' decision to unilaterally cease drafts without notice to the insured violates the duty of good faith and fair dealing.

14.     Defendants' decision to raise the premium for the first time in twenty-three (23) years, without providing adequate notice, violates the duty of good faith and fair dealing.

15.     Defendants' actions in preemptively denying a claim by cancelling the 1988 Policy without providing adequate notice violates the duty of good faith and fair dealing.

16.    Defendants' failure to use reasonable means to locate the Phillips' correct address prior to canceling the 1988 Policy, despite having actual knowledge that the address Defendants were using was incorrect, violates the duty of good faith and fair dealing.

## VI. Prayer

WHEREFORE, Plaintiff prays for judgment against Defendants for actual and punitive damages, interest and costs, including reasonable attorneys' fees, the sum of which do not exceed the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

Dated this __14__ day of __February__, 2013.

Mark E. Walraven
Attorney for Plaintiff

Mark E. Walraven
Of the Firm: Graft & Walraven PLLC

OBA#31257
P. O. Box 1477
Clinton, Oklahoma 73601
Ph: (580) 323-1516
Fax: (580) 323-1769
mark@graftwalravenlaw.com

# SOUTHWESTERN LIFE

"Exhibit A"

INSURANCE COMPANY
DALLAS, TEXAS

### HOYT RAY PHILLIPS SR

### 910053730

an *ICH* company

A STOCK COMPANY

500 N. Akard / P.O. Box 2699 / Dallas, Texas 75221
(Herein called the Company)

This policy is a legal contract between the Company and the owner.

## READ YOUR POLICY CAREFULLY

The Company will pay the proceeds as defined herein to the owner on the Maturity Date if the insured is living on that date.

Upon receipt by the Company at its Principal Office of due proof that the insured died before the Maturity Date and while this policy was in force, the Company will pay the proceeds to the beneficiary.

All payments are subject to all of the provisions of this and the following pages of this policy. This policy is issued in consideration of the application and payment of the initial premium.

## NOTICE OF 20 DAY RIGHT TO EXAMINE THE POLICY

This policy may be cancelled by delivering or mailing the policy to Southwestern Life Insurance Company or to the insurance agent through whom it was effected before midnight of the twentieth day after receipt of such policy by the applicant. Upon such delivery or mailing, the policy shall be void from the beginning. Notice given by mail and return of the policy or contract by mail are effective on being postmarked, properly addressed and postage prepaid. The Company must return all payments made for this policy within ten days after it receives notice of cancellation and the returned policy.

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE PLAN
ADJUSTABLE DEATH BENEFIT. PROCEEDS PAYABLE AT DEATH PRIOR TO THE MATURITY DATE.
PROCEEDS MAY EXCEED INITIAL SPECIFIED AMOUNT. FLEXIBLE PREMIUMS PAYABLE DURING
THE LIFETIME OF THE INSURED UNTIL THE MATURITY DATE. PREMIUMS ALLOCATED TO COST OF
INSURANCE. BALANCE ACCUMULATES AT INTEREST IN AN ACCUMULATION ACCOUNT WHICH
WILL VARY IN VALUE BASED UPON THE AMOUNT OF INTEREST CREDITED.
NON-PARTICIPATING. NO DIVIDENDS APPLICABLE.

Secretary                                        President

LS0075

## ALPHABETICAL GUIDE

| | PAGE |
|---|---|
| Additional Interest | 13 |
| Age | 17 |
| Amount and Frequency | 7 |
| Annual Report | 18 |
| Assignment | 6 |
| Basis of Computation | 11 |
| Beneficiary | 6 |
| Cash Value | 9 |
| Cash Surrender Value | 9 |
| Change in Death Benefit Option | 9 |
| Change in Specified Amount | 8 |
| Continuation of Insurance | 10 |
| Cost of Insurance | 10 |
| Cost of Insurance Rates | 11 |
| Cost of Insurance Schedule | 3 |
| Death Benefit | 8 |
| Death of Beneficiary | 6 |
| Effective Date of Coverage | 18 |
| Elections, Designations, Changes and Requests | 18 |
| Entire Contract | 17 |
| Error in Age or Sex | 18 |
| Expense Charges | 5 |
| Guaranteed Interest Rate | 9 |
| Grace Period | 8 |
| Incontestability | 17 |
| Indebtedness | 12 |
| Initial Premium | 6 |
| Initial Specified Amount | 3 |
| Interest Credits | 11 |
| Loan Interest | 12 |
| Loan Interest Rate Change | 13 |

| | PAGE |
|---|---|
| Loan Value | 12 |
| Maturity Date | 18 |
| Minimum Annual Premium | 7 |
| Monthly Deduction | 9 |
| Non-Participating | 18 |
| Owner | 6 |
| Owner and Beneficiary Change | 6 |
| Partial Withdrawals | 10 |
| Payment of Proceeds | 17 |
| Planned Periodic Premium | 7 |
| Policy Date | 18 |
| Policy Loan | 12 |
| Premium Class | 17 |
| Proceeds | 17 |
| Projection of Benefits and Values | 18 |
| Qualifying Annual Premium | 6 |
| Reinstatement | 7 |
| Repayment | 12 |
| Simultaneous Death | 6 |
| Suicide Exclusion | 18 |
| Surrender | 9 |
| Surrender Charge | 10 |
| Table of Guaranteed Maximum Monthly Cost Of Insurance Rates per $1,000 | 4 |
| Table of Minimum Death Benefits | 5 |
| Table of Surrender Charges | 5 |
| Termination | 18 |
| Termination of Policy | 12 |
| Unscheduled Premiums | 7 |
| Where Payable | 8 |
| Withdrawal | 14 |

## POLICY PROVISIONS

| | |
|---|---|
| Death Benefit | 8 |
| General | 17–18 |
| Loan | 12–13 |
| Non-Forfeiture | 9–11 |
| Policy Change | 8–9 |
| Owner, Beneficiary and Assignment | 6 |
| Premium Payments, Grace Period and Reinstatement | 6–8 |
| Settlement Options | 13–17 |

## OPTIONAL BENEFITS

If you have purchased any optional benefits, they will be listed in the Rider Cost of Insurance Schedule section of a Policy Data Page and the benefit will be inserted in the contract after page 18.

POLICY DATA PAGE

POLICY NUMBER - 910053730                    AGE - 57  MALE
INSURED - HOYT RAY PHILLIPS, SR              PREMIUM CLASS - NS SELECT

POLICY DATE - MAY 17, 1988          DATE OF ISSUE - MAY 2, 1988
MATURITY DATE - MAY 17, 2031
INITIAL SPECIFIED AMOUNT - $35,000   INITIAL PREMIUM -           $28.76
PLANNED PERIODIC PREMIUM - $28.76    QUALIFYING ANNUAL PREMIUM - $1,537.25
MINIMUM ANNUAL PREMIUM -   $726.25   PREMIUM FREQUENCY -
                                                                MONTHLY
PLAN - FLEXIBLE PREMIUM ADJUSTABLE LIFE      DEATH BENEFIT OPTION - A

POLICY LOAN INTEREST IS CHARGED IN ADVANCE BASED ON A FIXED RATE OF INTEREST.

NOTE--IT IS POSSIBLE THAT THIS POLICY WILL CEASE TO BE IN FORCE BEFORE THE
MATURITY DATE IF THE PLANNED PERIODIC PREMIUMS ARE PAID BUT ARE NOT SUFFI-
CIENT TO CONTINUE THIS POLICY TO THAT DATE, OR IF OTHER PREMIUMS PAID ARE
NOT SUFFICIENT TO CONTINUE THIS POLICY TO THAT DATE.

COST OF INSURANCE SCHEDULE

| FORM NUMBER | BENEFIT DESCRIPTION | INITIAL SPECIFIED AMOUNT | MONTHLY COST OF INSURANCE | FIRST MONTHLY DEDUCTION | LAST MONTHLY DEDUCTION |
|---|---|---|---|---|---|
| LS0075 | FLEX. PREM. ADJ. LIFE | $35,000 | SEE PAGE 4 | 05/17/88 | 04/17/31 |
| LS2059A | SPOUSE RIDER | $10,000 | SEE PAGE 5A | 05/17/88 | 04/17/31 |
| | MARY LEATA PHILLIPS -- FEMALE AGE 54 -- PREMIUM CLASS - STANDARD | | | | |

POLICY DATA PAGE

TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER $1,000

| AGE | POLICY YEAR | RATE | AGE | POLICY YEAR | RATE |
|-----|-------------|------|-----|-------------|------|
| 57 | 1 | 1.0943 | 79 | 23 | 8.3295 |
| 58 | 2 | 1.1898 | 80 | 24 | 9.0933 |
| 59 | 3 | 1.2966 | 81 | 25 | 9.9561 |
| 60 | 4 | 1.4132 | 82 | 26 | 10.9415 |
| 61 | 5 | 1.5454 | 83 | 27 | 12.0451 |
| 62 | 6 | 1.6947 | 84 | 28 | 13.2507 |
| 63 | 7 | 1.8636 | 85 | 29 | 14.5338 |
| 64 | 8 | 2.0495 | 86 | 30 | 15.8725 |
| 65 | 9 | 2.2510 | 87 | 31 | 17.2693 |
| 66 | 10 | 2.4664 | 88 | 32 | 18.7217 |
| 67 | 11 | 2.6963 | 89 | 33 | 20.2307 |
| 68 | 12 | 2.9438 | 90 | 34 | 21.8432 |
| 69 | 13 | 3.2167 | 91 | 35 | 23.5890 |
| 70 | 14 | 3.5273 | 92 | 36 | 25.5811 |
| 71 | 15 | 3.8813 | 93 | 37 | 28.0012 |
| 72 | 16 | 4.2913 | 94 | 38 | 31.3933 |
| 73 | 17 | 4.7558 | 95 | 39 | 36.8249 |
| 74 | 18 | 5.2677 | 96 | 40 | 46.5495 |
| 75 | 19 | 5.8188 | 97 | 41 | 67.1447 |
| 76 | 20 | 6.4011 | 98 | 42 | 83.3333 |
| 77 | 21 | 7.0058 | 99 | 43 | 83.3333 |
| 78 | 22 | 7.6441 | | | |

THE MONTHLY GUARANTEED COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY TABLE, AGE LAST BIRTHDAY. ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED ON ITS EXPECTATIONS AS TO FUTURE MORTALITY EXPERIENCE. HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

POLICY DATA PAGE

TABLE OF MINIMUM DEATH BENEFITS

| ATTAINED AGE | PERCENTAGE OF ACCUMULATION ACCOUNT | ATTAINED AGE | PERCENTAGE OF ACCUMULATION ACCOUNT |
|---|---|---|---|
| 0-40 | 250% | 65 | 120% |
| 45 | 215% | 70 | 115% |
| 50 | 185% | 75 | 105% |
| 55 | 150% | 90 | 105% |
| 60 | 130% | 95 AND OVER | 100% |

FOR AGES NOT SHOWN, THE APPLICABLE PERCENTAGE WILL BE DETERMINED BY
INTERPOLATING BETWEEN THE AGES THAT ARE SHOWN.

EXPENSE CHARGES

THERE IS A CHARGE OF $3.00 PER MONTH PER POLICY.  THIS CHARGE MAY BE IN-
CREASED BY THE COMPANY AT A POLICY ANNIVERSARY AFTER THE POLICY HAS
BEEN IN FORCE FOR AT LEAST ONE YEAR, BUT NOT TO EXCEED $5.00 PER MONTH
PER POLICY AND ONLY UPON THE GIVING OF PRIOR NOTICE OF AN INCREASE TO
THE OWNER.

THERE IS AN EXPENSE CHARGE OF $0.29 PER MONTH FOR EACH $1,000 OF
INITIAL SPECIFIED AMOUNT.

THERE IS A PERCENTAGE OF PREMIUM CHARGE FOR THE FIRST POLICY YEAR ONLY
EQUAL TO 80% OF PREMIUMS PAID TO THE COMPANY, BUT THE CHARGE WILL NOT
APPLY TO ANY PREMIUMS PAID IN EXCESS OF THE QUALIFYING ANNUAL PREMIUM.

TABLE OF SURRENDER CHARGES

| YEAR | SURRENDER CHARGE | YEAR | SURRENDER CHARGE |
|---|---|---|---|
| 1 | $ 624.31* | 6 | $ 535.12 |
| 2 | 609.44 | 7 | 520.26 |
| 3 | 594.58 | 8 | 505.39 |
| 4 | 579.72 | 9 | 475.66 |
| 5 | 549.99 | 10 | NONE |

*THIS IS THE MAXIMUM SURRENDER CHARGE WHICH CAN BE MADE IN THE FIRST
POLICY YEAR.  SEE SURRENDER CHARGE PROVISION ON PAGE 10.

A PRO RATA SURRENDER CHARGE WILL BE IMPOSED ON PARTIAL WITHDRAWALS IF
THE EFFECT OF SUCH PARTIAL WITHDRAWAL IS TO REDUCE THE AMOUNT OF THE
CURRENT SPECIFIED AMOUNT.  THE AMOUNT OF THE SURRENDER CHARGE WILL BE
BASED UPON THE PERCENTAGE OF REDUCTION IN THE CURRENT SPECIFIED AMOUNT BUT
WILL NOT BE LESS THAN TWENTY-FIVE DOLLARS ($25.00).

NOTE:  AT SOME FUTURE TIME, THE POLICY CASH VALUE LESS INDEBTEDNESS MAY
NOT COVER THE NEXT MONTHLY DEDUCTION. IN SUCH A SITUATION, THE
POLICY WILL ENTER THE GRACE PERIOD AND WILL TERMINATE AT THE
END OF THAT PERIOD IF SUFFICIENT PREMIUM TO COVER THE MONTHLY
DEDUCTION IS NOT PAID.  SEE MINIMUM PREMIUM PROVISION.

SOUTHWESTERN LIFE INSURANCE COMPANY
P. O. BOX 2699, DALLAS, TEXAS 75221

POLICY DATA PAGE

SPOUSE RIDER SCHEDULE

EFFECTIVE DATE - MAY 17, 1988

TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER $1,000

| AGE | POLICY YEAR | RATE | AGE | POLICY YEAR | RATE |
|-----|-------------|--------|-----|-------------|---------|
| 54 | 1 | 0.5730 | 76 | 23 | 3.8846 |
| 55 | 2 | 0.6130 | 77 | 24 | 4.3438 |
| 56 | 3 | 0.6540 | 78 | 25 | 4.8411 |
| 57 | 4 | 0.6914 | 79 | 26 | 5.3971 |
| 58 | 5 | 0.7283 | 80 | 27 | 6.0366 |
| 59 | 6 | 0.7706 | 81 | 28 | 6.7749 |
| 60 | 7 | 0.8216 | 82 | 29 | 7.6370 |
| 61 | 8 | 0.8832 | 83 | 30 | 8.6208 |
| 62 | 9 | 0.9621 | 84 | 31 | 9.7216 |
| 63 | 10 | 1.0593 | 85 | 32 | 10.9306 |
| 64 | 11 | 1.1681 | 86 | 33 | 12.2389 |
| 65 | 12 | 1.2845 | 87 | 34 | 13.6543 |
| 66 | 13 | 1.4061 | 88 | 35 | 15.1838 |
| 67 | 14 | 1.5237 | 89 | 36 | 16.8317 |
| 68 | 15 | 1.6507 | 90 | 37 | 18.6490 |
| 69 | 16 | 1.7884 | 91 | 38 | 20.6664 |
| 70 | 17 | 1.9558 | 92 | 39 | 22.9970 |
| 71 | 18 | 2.1580 | 93 | 40 | 25.7925 |
| 72 | 19 | 2.4109 | 94 | 41 | 29.5778 |
| 73 | 20 | 2.7139 | 95 | 42 | 35.3585 |
| 74 | 21 | 3.0632 | 96 | 43 | 45.5264 |
| 75 | 22 | 3.4575 | | | |

SOUTHWESTERN LIFE INSURANCE COMPANY
P. O. BOX 2699, DALLAS, TEXAS 75221

## OWNER, BENEFICIARY AND ASSIGNMENT PROVISIONS

### OWNER

The owner means the owner set out in the application unless subsequently changed. During the insured's lifetime, the owner has the right to receive every benefit, exercise every right and enjoy every privilege granted by this policy.

### BENEFICIARY

The beneficiary named in the application will receive the proceeds upon death of the insured unless the beneficiary has been changed by the owner.

If more than one person is named as beneficiary, the proceeds will be paid in equal shares to the surviving beneficiaries, unless otherwise provided.

If the beneficiary is "children," this means children born to or legally adopted by the insured.

### DEATH OF BENEFICIARY

If any beneficiary dies before the insured, that beneficiary's interest will pass to any surviving beneficiaries or contingent beneficiaries according to their respective interest.

If no beneficiary or contingent beneficiary survives the insured, the proceeds will be paid to the owner or the owner's estate.

### OWNER AND BENEFICIARY CHANGE

The owner may change the owner and the beneficiary at any time during the lifetime of the insured unless otherwise provided in a previous designation. Any change must be in written form satisfactory to the Company.

The change will take effect on the date the request was signed, but it will not apply to any payments made by the Company before the request was received and recorded by the Company.

### SIMULTANEOUS DEATH

If any beneficiary dies within 15 days after the insured but before due proof of the insured's death is received by the Company, the proceeds will be paid as if the beneficiary died before such insured.

### ASSIGNMENT

This policy may be assigned. No assignment will be recognized by the Company unless a copy is filed with the Company. The Company will not be responsible for the validity of any assignment.

The claim of any assignee is subordinate to that of the Company, including any indebtedness to the Company.

The rights of the beneficiary and owner are subject to the rights of the assignee.

## PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

### INITIAL PREMIUM

The initial premium is the premium due on the policy date of this policy. The initial premium cannot be less than one twelfth of the minimum annual premium.

### QUALIFYING ANNUAL PREMIUM

The qualifying annual premium for this policy is shown on a Policy Data Page.

## PLANNED PERIODIC PREMIUM

The planned periodic premium is the premium shown on a Policy Data Page.

## MINIMUM ANNUAL PREMIUM

This policy at all issue ages, will not lapse during the first three policy years, if on each monthly anniversary date during the period (i) is greater than or equal to (ii), where: (i) is the sum of all premiums paid to date minus any policy loans and partial withdrawals; and, (ii) is one twelfth (1/12) of the minimum annual premium shown on a Policy Data Page, multiplied by the number of months elapsed since the policy date of this policy, including the month following the monthly anniversary date.

## AMOUNT AND FREQUENCY

The owner may change the amount of planned periodic premium. The Company reserves the right to limit the amount of any increase.

The frequency of premium payment shown on a Policy Data Page will serve only as an indication of the owner's preference as to probable future frequency of payment. The owner may change the frequency of planned periodic premium payment at any time. Each premium payment will be credited by the Company as described in the Accumulation Account provision.

A check or draft given for all or any part of a premium, unless paid upon its presentation to the bank or person drawn on, shall not be considered as payment.

## REINSTATEMENT

Subject to meeting the following conditions, the policy may be reinstated during the lifetime of the insured and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are:

1. Evidence of insurability satisfactory to the Company must be submitted;

2. A premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid;

3. A minimum premium sufficient to keep the policy in force for two months at time of reinstatement must be paid; and

4. Any indebtedness existing at the end of the grace period must be paid or reinstated.

Monthly deductions will not be due for the period of time between the end of the grace period and the date of reinstatement.

Upon reinstatement, surrender charges, if any, will then be reinstated in the amount shown on a Policy Data Page for the policy year of lapse. Such surrender charges will decrease in exactly the same manner they would have had the policy not lapsed.

The Suicide Exclusion and Incontestability sections will apply if the policy has been in force for less than 2 years. If the policy has been in force for 2 years during the lifetime of the insured, it will be contestable only as to statements made in the reinstatement application; and, only for a period of 2 years from the effective date of reinstatement.

## UNSCHEDULED PREMIUMS

Additional premiums may be paid at any time before the Maturity Date. The Company reserves the right to limit the number and amount of additional premium payments.

If the total premiums paid on this policy should exceed at any time the limitations of the Internal Revenue Code, we will return the excess premiums and any accrued interest to you within the time permitted by law.

## GRACE PERIOD

If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. The cash surrender value and the monthly deductions are described in the Non-forfeiture Provision. If the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. The policy will remain in force during the grace period, unless surrendered.

See the Minimum Annual Premium section for the method of avoiding lapsation of the policy during the first three policy years.

## WHERE PAYABLE

Premiums are payable in advance to the Company at its Principal Office. Premiums may be paid to an authorized representative of the Company upon delivery of a receipt signed by the President, Vice President, Secretary, or Assistant Secretary.

## DEATH BENEFIT PROVISION

This policy will provide one of the following death benefits in determining the proceeds of the policy:

1. Option A. The accumulation account is included in the specified amount. The death benefit will be the greater of:
    (a) the specified amount on the date of death, or
    (b) the accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

2. Option B. The accumulation account is not included in the specified amount. The death benefit will be the greater of:
    (a) the accumulation account on the date of death, plus the specified amount on the date of death, or
    (b) the accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

The death benefit option in effect on the policy date is shown on a Policy Data Page.

## POLICY CHANGE PROVISIONS

### CHANGE IN SPECIFIED AMOUNT

At any time after the second policy year, upon written request, the specified amount may be changed, subject to the following conditions:

Specified Amount Decreases
    (a) Any decrease will be effective on the monthly anniversary day on or next following receipt of the request by the Company. A decrease will be applied against the initial specified amount or the current specified amount, if smaller.

    (b) The specified amount remaining in force after any requested decrease may not be less than $5,000.
    (c) The cash surrender value following the decrease must be greater than zero.

A pro rata surrender charge will be deducted from the accumulation account. The pro rata charge will apply to the applicable surrender charge on the effective date of the decrease. Future surrender charges will be reduced proportionately.

## CHANGE IN DEATH BENEFIT OPTION

If the death benefit option is Option B, it may be changed to Option A. The new specified amount will be the death benefit as of the effective date of change. If the death benefit option is Option A, it may be changed to Option B. The new specified amount will be the death benefit less the value of the accumulation account as of the effective date of change.

The effective date of change will be the monthly anniversary day on or next following the date the Company receives the request for change.

The death benefit option may not be changed if:

(i) such change will result in a specified amount below $5,000; or,
(ii) after such change the policy would not qualify as a life insurance policy as defined at the date of change by Federal law or regulation.

No change may be made during the first two policy years.

## NON-FORFEITURE PROVISION

### CASH VALUE

The cash value of this policy is the value of the accumulation account less the surrender charge. The accumulation account on the date of issue will be the initial net premium. Net premium is the gross premium paid less the percentage of premium expense charge shown on a Policy Data Page.

The accumulation account on a monthly anniversary day will be calculated as (a) plus (b) plus (c) minus (d) minus (e) minus (f) where:

(a) is the accumulation account on the preceding monthly anniversary day;
(b) is one month's interest on item (a);
(c) is the premium paid (less the percentage of premium expense charge during the first policy year) plus interest credited to any premium received since the preceding monthly anniversary day;
(d) is the monthly deduction for the month preceding the monthly anniversary day;
(e) is one month's interest on item (d);
(f) is the amount of any partial withdrawals.

On any day other than a monthly anniversary day, the accumulation account will be calculated as (a) plus (c) minus (d) minus (f) using the definitions above.

### GUARANTEED INTEREST RATE

The guaranteed interest rate is as described in the Interest Credits section but not less than 4.5% per year compounded yearly.

### MONTHLY DEDUCTION

The monthly deduction for a policy month will be calculated as (a) plus (b) where:

(a) is the cost of insurance plus the cost of additional benefits provided by rider for the policy month; and
(b) is the monthly expense charges as shown on a Policy Data Page.

### CASH SURRENDER VALUE

At any time, the cash surrender value of this policy is:

1. the accumulation account;
2. less any indebtedness on this policy; and
3. less a surrender charge, if any.

### SURRENDER

The owner may surrender this policy for its cash surrender value at any time before the policy terminates.

The Company may defer payment for not more than 6 months following receipt by the Company of the surrender request unless the surrender is to be applied to pay premiums on policies with the Company.

If a surrender is requested within 30 days after policy anniversary, the cash surrender value will not be less than the cash surrender value on that anniversary less any policy loans or partial surrenders made on or after such anniversary.

## SURRENDER CHARGE

The surrender charge which is shown on a Policy Data Page, is a charge against the accumulation account for surrender of the policy. It is not applicable to the surrender of a rider attached to the policy. During the first policy year only, the surrender charge will be imposed against the accumulation account as follows: the charge imposed will be limited to the amount of the qualifying annual premium plus the premium paid for any riders attached to the policy, as shown on a Policy Data Page. Any premium in excess of that amount received by the Company, less any indebtedness, will be returned as the cash surrender value of the policy. After the first policy year, see a Policy Data Page for the applicable surrender charge. See Partial Withdrawals for applicable surrender charges.

## PARTIAL WITHDRAWALS

Partial withdrawals may be made from the accumulation account after this policy has been in force for one year. No more than one partial withdrawal may be made in one policy year. The minimum partial withdrawal which may be made is five hundred dollars. The maximum amount which may be withdrawn is the amount of the accumulation account less the surrender charge, if any, and less any indebtedness on the policy. The specified amount will be reduced by the amount of the withdrawal if death benefit Option A is in effect.

A pro rata surrender charge will be imposed against the accumulation account on partial withdrawals. The amount of the surrender charge will be based upon the percentage of reduction in the current specified amount, but will not be less than twenty-five dollars ($25.00).

Subject to evidence of insurability satisfactory to the Company, the current specified amount may be increased by the amount of a partial withdrawal. In such a case, a charge of only twenty-five dollars ($25.00) will be imposed against the accumulation account.

## CONTINUATION OF INSURANCE

The insurance on all insureds will continue until the earlier of:

1. the monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or
2. the maturity date.

The amount of insurance under the policy is the death benefit as defined in the Death Benefit provision.

The amount of insurance under any rider is the death benefit of the rider.

While this policy is in force under this provision, it may be surrendered for its cash surrender value.

If the insured is living on the Maturity Date, the cash surrender value on that date will be paid to the owner.

This provision will not continue the policy beyond the Maturity Date or continue any rider beyond its termination date as provided in the rider.

## COST OF INSURANCE

1. The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

(a) is the monthly cost of insurance rate as described in the Cost of Insurance Rates section;
(b) is the insured's death benefit at the beginning of the policy month divided by 1.0036748;
(c) is the accumulation account at the beginning of the policy month as described in the cash value section.

Divide the result by $1,000.

2. The monthly cost of insurance for any rider is shown in the Cost of Insurance Schedule for the rider shown on a Policy Data Page.

## COST OF INSURANCE RATES

1. The monthly cost of insurance rate for the policy is based on the insured's sex, attained age and premium class on the policy date of the policy. Attained age means age on the prior policy anniversary.

The guaranteed maximum monthly cost of insurance rates are shown on a Policy Data Page.

Monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience. Any change in such rates will apply uniformly to all members of the same age, sex and class. The monthly cost of insurance rates will not be greater than those shown on a Policy Data Page.

2. The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section on a Policy Data Page.

## BASIS OF COMPUTATIONS

Minimum cash values are based on the Commissioners 1980 Standard Ordinary Mortality Table, Age Last Birthday with interest at 4.5% compounded yearly.

The non-forfeiture values for this policy are equal to or greater than those required by law. The non-forfeiture values are calculated in accordance with the Standard Non-Forfeiture Value Method. A detailed statement of the method of computing values has been filed with the insurance supervisory official of the state in which the application for this policy was signed.

## INTEREST CREDITS

All premiums paid shall be credited to the accumulation account.

The interest rate to be credited monthly to the accumulation account, except to that portion borrowed as a policy loan, during each calendar quarter, or portion thereof, shall be equal to: seventy-five percent (75%) of the interest rate payable on the third business day immediately preceding each January 1, April 1, July 1 and October 1, by the Chemical Bank, New York, New York, or its successor(s) on three (3) month time certificates of deposit when that interest rate is below 16%; eighty percent (80%) of the interest rate payable by the Chemical Bank will be credited when the certificates of deposit interest rate is 16% or greater.

Interest in excess of the above rate may be credited to the accumulation account at the option of the Company based upon its expectations as to future interest rates.

Should the Chemical Bank or its successor(s) cease issuing three (3) month time certificates of deposit, the Company reserves the right to substitute the three month certificate of deposit interest rate of another national banking institution of the Company's choice. Such substitution shall be subject to approval by the insurance regulatory authority of the state of residence of the owner, if required.

That portion of the accumulation account equal to an outstanding policy loan balance will earn interest of 4 1/2% per year. If the owner has elected to pay a variable loan interest rate (See, "Loan Interest Rate Change"), the outstanding loan balance will earn interest on an annual rate equal to the policy loan interest rate in effect for the policy month, less 2 1/2%. In no event will the accumulation account earn interest at a rate less than 4 1/2% per year.

Premiums paid the Company will earn interest beginning on the first business day following the date of deposit of the premiums to the Company's account, but in no event later than the fifth business day immediately following receipt of such premiums at the Principal Office of the Company except for the initial premium. The initial premium will earn interest beginning on the first business day immediately following approval for the issuance of this policy unless the premium is paid later. In such case, the premium will be credited in the normal manner for renewal premiums.

## LOAN PROVISION

### POLICY LOAN

The owner may obtain a loan at any time while this policy is in force and on the sole security thereof.

### LOAN VALUE

The loan value may not exceed the cash surrender value of the policy.

The Company may defer making a loan for not more than six months after application for the loan is made unless the loan is to pay premiums on policies with the Company.

### TERMINATION OF POLICY

At any time the total indebtedness equals or exceeds the cash value, the policy will terminate without value.

At least 31 days before the date the policy terminates, the Company will send a notice of its intention to void the policy, to the last known addresses of the owner and of any assignee of record.

### INDEBTEDNESS

Indebtedness means all existing loans on this policy plus earned interest which has either accrued or been added.

### REPAYMENT

A loan may be repaid at any time while this policy is in force. A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated.

### LOAN INTEREST

The amount which may be borrowed is that amount which, with any unpaid interest, will equal the cash surrender value as of the date of the policy loan.

Interest will be charged in advance on a loan from the date the loan is made or increased, at a yearly rate described below. Interest is payable in advance at the beginning of each policy year or when a loan is made or increased.

If interest is not paid when due, it is added to the loan.

The loan interest rate is an effective annual rate.

The fixed loan interest rate is 6.54% in advance.

## LOAN INTEREST RATE CHANGE

The owner may change, upon written request to the Company, from the fixed loan interest rate basis, described above, at any time, to a variable loan interest rate. The maximum variable loan interest rate is the greater of:

(a) A Published Monthly Average which is the Monthly Average of the Composite Yield on Seasoned Corporate Bonds as published by Moody's Investors Service, Inc. or any successor to that Service for the calendar month two months before the calendar month in which the loan is made or the policy year begins; if that Monthly Average is no longer published, a substantially similar average established by regulation by the insurance supervisory official of the state where the policy is delivered will be used; or

(b) 5 1/2%.

The maximum interest rate may change at the beginning of each policy year, but not more often.

If the rate for a policy year is less than 1/2% higher than the rate for the previous policy year, the Company will not increase the rate to the new rate. If the rate is at least 1/2% less than the rate for the previous policy year, the Company will decrease the rate to the new rate, but not below 5 1/2% per year.

The Company will notify the owner of the current loan interest rate when:

(a) a loan is made on this policy, or

(b) if the interest rate is to be increased.

The owner may elect to change back to the fixed loan interest rate but not during the first five policy years after electing a variable loan interest rate.

Interest credited on borrowed amounts will be in the amount described in the Accumulation Account provision.

Any election to change the loan interest rate basis:

(a) will be effective on the policy anniversary following the election;

(b) will apply to all outstanding loans; and

(c) will apply to all future policy years until changed.

## SETTLEMENT OPTIONS PROVISION

### ELECTION OF OPTIONS

Any amount payable at the death of the insured or any other termination of this policy will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any settlement option.

Payment under a combination of options, or payment to joint or successive payees, or payment to a beneficiary that is not a natural person may be elected only with the consent of the Company.

Any election must be made in writing to the Company. The Company may require the policy for endorsement.

### PAYMENTS

Payments will be made monthly unless otherwise elected.

The Company has the right to change the frequency of payments in order to make a periodic payment of at least $25.

The option date under Options 1, 2 and 3 is the date the proceeds are payable, or the date of election, whichever is later. Interest under Options 4 and 5 will accrue from such date.

Under Option 3, proof of the age of the payee will be required at the time the first payment is due. The Company reserves the right to require proof that the payee is alive at the time of each payment.

## ELECTION BY OWNER

During the lifetime of the insured, the owner may elect to have the proceeds paid under one of the following options.

## ELECTION BY BENEFICIARY

At the time proceeds are payable to the beneficiary, the beneficiary may elect one of the payment options if proceeds are available to the beneficiary in a lump sum. The beneficiary has 12 months after payment becomes due to elect one of the following options.

## CHANGE IN PAYMENTS

Partial withdrawal under Options 1 and 2 may not be made. All payments under Options 1 and 2 may be paid in one sum only with the consent of the Company. The value of any one sum payment will be the sum of any remaining guaranteed payments discounted at an interest rate of not less than 3% compounded annually.

Payments under Option 3 will be commuted only in event of death of the payee. Any payments that remain to be paid under Option 3 at the death of the payee will be paid in one sum. The value of the one sum payment will be the sum of the remaining guaranteed payments, discounted at an interest rate of not less than 3% compounded annually.

In the event additional interest is applicable to payments under Option 1, 2, or 3, any such payments, if paid in one sum, shall be discounted at an interest rate equal to that actually credited.

## ADDITIONAL INTEREST

Additional interest, if any, paid over the guaranteed 3%, will be in an amount and by a method determined by the Company.

## CLAIMS OF CREDITORS

To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

## ASSIGNMENT

The proceeds payable under one of these options may not be assigned.

## WITHDRAWAL

The minimum proceeds that may be applied under Option 4 or 5 is $1,000. The payee does not have the right to withdraw any portion of the proceeds under Option 4. The minimum proceeds that may be applied or may remain after a withdrawal under Option 5 is $1,000. The minimum amount that may be withdrawn is $1,000. Proceeds less than this amount will be paid in a lump sum to the payee.

The Company may postpone payment of any amount to be withdrawn for not more than 6 months from the date the written request for withdrawal is received in the Company's Principal Office.

## OPTION 1. EQUAL PAYMENTS FOR A GUARANTEED PERIOD

Equal monthly payments for the number of years elected, not to exceed 25 years. Payments will begin on the option date.

### Guaranteed Minimum Monthly Payment
### for each $1000 of net proceeds

| Period Income Is Payable (Years) | Monthly Income | Period Income Is Payable (Years) | Monthly Income |
|---|---|---|---|
| 1 | $84.47 | 14 | $7.26 |
| 2 | 42.86 | 15 | 6.87 |
| 3 | 28.99 | 16 | 6.53 |
| 4 | 22.06 | 17 | 6.23 |
| 5 | 17.91 | 18 | 5.96 |
| 6 | 15.14 | 19 | 5.73 |
| 7 | 13.16 | 20 | 5.51 |
| 8 | 11.68 | 21 | 5.32 |
| 9 | 10.53 | 22 | 5.15 |
| 10 | 9.61 | 23 | 4.99 |
| 11 | 8.86 | 24 | 4.84 |
| 12 | 8.24 | 25 | 4.71 |
| 13 | 7.71 | | |

## OPTION 2. EQUAL PAYMENTS OF A SPECIFIED AMOUNT

Equal monthly payments of at least $4.71 per month for each $1,000 of proceeds. Payments will begin on the option date and will continue until the proceeds and interest at the rate of 3% compounded annually are exhausted.

## OPTION 3. EQUAL PAYMENTS FOR LIFE

Equal monthly payments for a guaranteed period of 10, 15 or 20 years as elected and for life thereafter as shown in the table on the following page.

## OPTION 3
Amount of each monthly installment per $1,000 net proceeds.

Monthly Income for Life with Guaranteed Period of:

| Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years | Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years |
|---|---|---|---|---|---|---|---|---|---|
| 6 | 10 | $2.83 | $2.83 | $2.83 | 44 | 48 | $4.00 | $3.97 | $3.92 |
| 7 | 11 | 2.84 | 2.84 | 2.84 | 45 | 49 | 4.07 | 4.03 | 3.97 |
| 8 | 12 | 2.86 | 2.86 | 2.86 | 46 | 50 | 4.14 | 4.10 | 4.03 |
| 9 | 13 | 2.87 | 2.87 | 2.87 | 47 | 51 | 4.21 | 4.16 | 4.09 |
| 10 | 14 | 2.89 | 2.89 | 2.89 | 48 | 52 | 4.29 | 4.23 | 4.15 |
| 11 | 15 | 2.90 | 2.90 | 2.90 | 49 | 53 | 4.37 | 4.31 | 4.21 |
| 12 | 16 | 2.92 | 2.92 | 2.92 | 50 | 54 | 4.45 | 4.38 | 4.28 |
| 13 | 17 | 2.93 | 2.93 | 2.93 | 51 | 55 | 4.54 | 4.46 | 4.34 |
| 14 | 18 | 2.95 | 2.95 | 2.95 | 52 | 56 | 4.64 | 4.55 | 4.41 |
| 15 | 19 | 2.97 | 2.97 | 2.97 | 53 | 57 | 4.74 | 4.63 | 4.48 |
| 16 | 20 | 2.99 | 2.99 | 2.99 | 54 | 58 | 4.84 | 4.72 | 4.55 |
| 17 | 21 | 3.00 | 3.00 | 3.00 | 55 | 59 | 4.96 | 4.82 | 4.61 |
| 18 | 22 | 3.02 | 3.02 | 3.02 | 56 | 60 | 5.07 | 4.91 | 4.68 |
| 19 | 23 | 3.04 | 3.04 | 3.04 | 57 | 61 | 5.19 | 5.01 | 4.75 |
| 20 | 24 | 3.07 | 3.06 | 3.06 | 58 | 62 | 5.32 | 5.11 | 4.82 |
| 21 | 25 | 3.09 | 3.09 | 3.08 | 59 | 63 | 5.45 | 5.21 | 4.89 |
| 22 | 26 | 3.11 | 3.11 | 3.11 | 60 | 64 | 5.59 | 5.32 | 4.95 |
| 23 | 27 | 3.13 | 3.13 | 3.13 | 61 | 65 | 5.74 | 5.42 | 5.02 |
| 24 | 28 | 3.16 | 3.16 | 3.15 | 62 | 66 | 5.89 | 5.53 | 5.08 |
| 25 | 29 | 3.19 | 3.18 | 3.18 | 63 | 67 | 6.05 | 5.64 | 5.13 |
| 26 | 30 | 3.22 | 3.21 | 3.21 | 64 | 68 | 6.22 | 5.75 | 5.19 |
| 27 | 31 | 3.24 | 3.24 | 3.23 | 65 | 69 | 6.39 | 5.85 | 5.24 |
| 28 | 32 | 3.27 | 3.27 | 3.26 | 66 | 70 | 6.56 | 5.95 | 5.28 |
| 29 | 33 | 3.30 | 3.30 | 3.29 | 67 | 71 | 6.75 | 6.05 | 5.32 |
| 30 | 34 | 3.34 | 3.33 | 3.32 | 68 | 72 | 6.93 | 6.15 | 5.36 |
| 31 | 35 | 3.37 | 3.37 | 3.36 | 69 | 73 | 7.12 | 6.25 | 5.39 |
| 32 | 36 | 3.41 | 3.40 | 3.39 | 70 | 74 | 7.31 | 6.33 | 5.42 |
| 33 | 37 | 3.44 | 3.44 | 3.42 | 71 | 75 | 7.51 | 6.42 | 5.44 |
| 34 | 38 | 3.48 | 3.48 | 3.46 | 72 | 76 | 7.70 | 6.49 | 5.46 |
| 35 | 39 | 3.52 | 3.51 | 3.50 | 73 | 77 | 7.89 | 6.56 | 5.48 |
| 36 | 40 | 3.57 | 3.56 | 3.54 | 74 | 78 | 8.08 | 6.62 | 5.49 |
| 37 | 41 | 3.61 | 3.60 | 3.58 | 75 | 79 | 8.26 | 6.67 | 5.49 |
| 38 | 42 | 3.66 | 3.65 | 3.62 | 76 | 80 | 8.43 | 6.71 | 5.50 |
| 39 | 43 | 3.71 | 3.70 | 3.67 | 77 | 81 | 8.60 | 6.75 | 5.51 |
| 40 | 44 | 3.76 | 3.75 | 3.71 | 78 | 82 | 8.76 | 6.78 | 5.51 |
| 41 | 45 | 3.82 | 3.80 | 3.76 | 79 | 83 | 8.90 | 6.81 | 5.51 |
| 42 | 46 | 3.87 | 3.85 | 3.81 | 80 | 84 | 9.02 | 6.83 | 5.51 |
| 43 | 47 | 3.94 | 3.91 | 3.87 | | | | | |

*Age on the birthday coinciding with or next preceding the due–date of the first installment.
Ages not illustrated are available upon request.

## OPTION 4. PROCEEDS LEFT AT INTEREST – WITHDRAWALS NOT ALLOWED

The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually $30.00.
2) Semi–Annually $14.89.
3) Quarterly $7.42.
4) Monthly $2.47.

At the end of the period selected, the proceeds with accrued interest will be paid in one sum unless otherwise provided in the election.

## OPTION 5. PROCEEDS LEFT AT INTEREST – WITHDRAWALS ALLOWED

The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually $30.00.
2) Semi–Annually $14.89.
3) Quarterly $7.42.
4) Monthly $2.47.

The payee may withdraw portions of the proceeds by request in writing to the Company. At the end of the specified period, any remaining proceeds with accrued interest will be paid in one sum.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

This policy, including any attached riders, and the attached copy of the application are the entire contract. This policy cannot be changed or any of its provisions waived, including any extension of time to pay premiums, except by the President, a Vice President or the Secretary.

All statements made in an application are assumed, in the absence of fraud, to be representations and not warranties. No statement will be used to void this policy or defend against a claim unless it is contained in the application or a supplemental application.

Any changes, modifications, or waivers must be in writing. No agent has authority to waive a complete answer to any question on the application, pass on insurability, make or alter any contract or waive any of the Company's other rights or requirements.

### INCONTESTABILITY

This policy will be incontestable after it has been in force during the lifetime of the insured for 2 years from the date of issue except for non–payment of premiums.

### PROCEEDS

Proceeds means the amount payable on the Maturity Date, or the surrender of this policy prior to the maturity date, or upon the death of the insured.

The proceeds payable on death will be the death benefit less any indebtedness. If the policy is surrendered the proceeds will be the cash surrender value. On the Maturity Date the proceeds will be the cash surrender value.

### PAYMENT OF PROCEEDS

The proceeds are subject first to any indebtedness to the Company and then to the interest of any assignee of record. Payments to satisfy any indebtedness to the Company and any assignee will be paid in one sum.

### PREMIUM CLASS

The insured's premium class is shown on a Policy Data page.

### AGE

Age means age last birthday.

## ERROR IN AGE OR SEX

If the age or sex of the insured has been misstated, the death benefit will be:

1. the accumulation account on the date of death, plus

2. the amount of insurance which the most recent monthly deduction would have purchased at the correct age and sex.

## SUICIDE EXCLUSION

If the insured commits suicide while sane or insane within two years after the date of issue, the amount payable by the Company will be limited to the premiums paid prior to the insured's death less any indebtedness.

## ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS

All elections, designations, changes, and requests must be in a written form satisfactory to the Company and become effective when received and approved by the Company at its Principal Office.

## NON-PARTICIPATING

This is a non-participating policy. This policy will not share in any of the Company's profits or surplus earnings. The Company will not pay dividends on this policy.

## MATURITY DATE

The Maturity Date is the policy anniversary on or next following the insured's 100th birthday while this policy is in force. It is the date on which insurance coverage will terminate, no more premiums may be paid, and the cash surrender value is paid to the owner. It is possible that coverage will end prior to the Maturity Date if the premiums paid and interest credited are not sufficient to continue coverage to such date.

## POLICY DATE

Policy years and policy anniversaries are computed from the policy date.

## ANNUAL REPORT

At least once a year, the Company will send the owner a report which shows premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, and all charges since the last report.

## PROJECTION OF BENEFITS AND VALUES

The Company will provide a projection of future death benefits and the value of the accumulation account at any time upon written request and payment of a service fee. The fee payable will be the one then in effect for this service. The projection will be based on:

(1) Assumptions as to specified amounts, type of coverage option and future premium payments as may be specified by the owner, and

(2) Such other assumptions as are necessary and specified by the Company and/or the owner.

## EFFECTIVE DATE OF COVERAGE

The effective date of coverage under this policy is as follows:

1. The policy date is the effective date for all coverage provided in the original application.

2. The effective date for any addition to coverage will be the monthly anniversary date on or next following the date the application for the addition is approved by the Company.

## TERMINATION

This policy will terminate when any one of the following events occur:

1. The owner requests that coverage terminate,

2. The insured dies,

3. The policy matures,

4. The grace period ends without payment of the required premiums,

5. The total indebtedness equals or exceeds the cash value.

# SOUTHWESTERN   LIFE

## INSURANCE  COMPANY
an  ICH  company
Dallas, Texas

### SPOUSE  RIDER
### LEVEL  TERM  INSURANCE

The following is a part of the policy to which it is attached.

## CONSIDERATION

This rider is issued in consideration of the application and payment of the monthly cost of insurance. A copy of the application is attached.

## SPOUSE

Spouse means the husband or wife of the insured named in the application or a supplemental application attached to the policy.

## BENEFICIARY

The insured will receive the proceeds of this rider upon death of the spouse, unless the beneficiary has been changed by the owner.

## DEATH BENEFIT

The amount of death benefit is shown in the Monthly Cost of Insurance Schedule on a Policy Data Page. The Company will pay this amount upon the receipt of due proof of the death of the spouse. Death must occur while the policy and this rider are in force.

## COST OF INSURANCE

The cost of insurance is calculated as (a) multiplied by (b) where:

(a) is the cost of insurance rate;
(b) is the death benefit at the beginning of the policy month, divided by 1,000.

## COST OF INSURANCE RATE

The monthly cost of insurance rate for the death benefit is based on the spouse's sex, age and rate class on the effective date of this rider.

The monthly cost of insurance for any increase in the death benefit is based on the spouse's sex, attained age and rate class on the date of change.

Attained age means age on the prior policy anniversary.

The monthly cost of insurance rates shown in the Monthly Cost of Insurance Schedule on a Policy Data Page for this rider are based on the Commissioner's 1980 Standard Ordinary Mortality Table, Age Last Birthday.

Monthly cost of insurance rates will be determined by the Company based on its expectations as to future mortality experience.

L S2059A

## MONTHLY DEDUCTION

The monthly deduction is the monthly cost of insurance.

## CHANGE IN COVERAGE

After the first policy year, the amount of death benefit may be changed. Any change will be subject to the following conditions:

1. A written request must be submitted to the Company.
2. For any increase, an application and evidence of insurability satisfactory to the Company must be submitted.
3. The amount may not be decreased to less than $10,000. The decrease will be applied first against any increases, beginning with the most recent, and then against the original amount.
4. For any increase, the first month's cost of insurance must be paid.

## CONVERSION

Upon maturity of the policy or the death of the insured under the policy, the coverage under this rider may be converted. The new policy may be on any plan, except term, then being issued by the Company; and for an amount not more than the amount of this rider. The premium rate for the new policy will be the rate in effect on the conversion date. The rate will be based on the spouse's sex and attained age on the conversion date and rate class on the effective date of this rider.

The conversion will be made upon receipt of a written request and payment of the first premium on the new insurance.

Waiver of Premiums for Total and Permanent Disability and/or Accidental Death Benefits may be included in the new policy only with the consent of the Company.

## VALUES

This rider has no cash value, cash surrender value, or loan value.

## INCONTESTABILITY

This rider will be incontestable after it has been in force for 2 years from its date of issue.
For any benefit increase, the 2 year period will begin on the effective date of the increase.

## SUICIDE EXCLUSION

If the spouse commits suicide, while sane or insane, within 2 years after the date of issue of this rider, the amount payable by the Company will be limited to the cost of the rider.

If the spouse commits suicide, while sane or insane, within 2 years after the effective date of an increase in the death benefit, the amount payable by the Company will be limited to the cost of insurance for such increased amount.

## NON-PARTICIPATING

This rider will not share in any of the Company's profits or surplus earnings.

## TERMINATION

This rider will terminate on the earliest of the following dates:

1. when the policy terminates;
2. on the monthly anniversary day on or next following receipt of a written request;
3. on the date of the Last Monthly Deduction shown in the Monthly Cost of Insurance Schedule on a Policy Data Page.

## GENERAL PROVISIONS

All provisions of this policy, which are not inconsistent with this rider, apply to this rider.

## EFFECTIVE DATE

The effective date of this rider is the same as for the policy, unless the rider is added at a later date. The effective date will then be shown on a rider endorsement.

SECRETARY

# SOUTHWESTERN  LIFE

### INSURANCE  COMPANY
an  ICH  company
Dallas, Texas

## ADDITIONAL  INTEREST  CREDITS  RIDER

This rider is a part of the policy to which it is attached as of the policy date. No premium is charged for this rider.

## ADDITIONAL  INTEREST  CREDITS

Interest in addition to the currently declared interest rate will be credited to the accumulation account of the policy, in the amounts and at the times stated below, if the conditions stated below are met.

If the policy is in force, other than under a non-forfeiture option, at the end of policy years ten (10), fifteen (15), seventeen (17), eighteen (18), nineteen (19), and twenty (20), the policy will qualify for additional annual interest credits.

When the policy qualifies for additional annual interest credits, the Company will recalculate the value of the accumulation account of the policy by crediting the additional interest as if such interest had been in effect from the policy date of the policy. Additional interest will be added to the accumulation account at the end of the tenth policy year and at the end of each monthly policy anniversary thereafter while the policy is in force, other than under a non-forfeiture option.

The amount of additional interest credits to be applied is as follows:

| End of Year | Additional Annual Interest Percent |
|-------------|------------------------------------|
| 10 | .250% |
| 15 | .250% |
| 17 | .125% |
| 18 | .125% |
| 19 | .125% |
| 20 | .125% |

Qualification for and crediting of additional interest credits under this rider will not be affected if the policy lapses, provided the policy is reinstated.

SECRETARY

LS2083A