## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARY LEATA PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-13-829-R** |
| | ) | |
| **REASSURE AMERICA LIFE** | ) | |
| **INSURANCE COMPANY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Plaintiff Mary Leata Phillips' Motion to Remand. Doc. No. 14. For the following reasons, this motion is GRANTED.

Plaintiff's case arises out of Defendant Reassure America Life Insurance Company's[1] alleged wrongful termination of an insurance policy held on the life of Plaintiff's deceased husband, Hoyt Phillips. The relevant policy dates back to 1988. It is a $35,000 Universal Life Insurance policy with a rider on Plaintiff's life for $10,000. At the time Mr. Phillips purchased this policy, he and Plaintiff lived in an area that did not have mail service. Instead, they used a P.O. Box to receive mail until around the year 2000. At that point, the Phillipses were put on a mail route and cancelled the P.O. Box.

Unfortunately, neither party sought to contact the other regarding the mailing address change. Instead, Defendant mailed annual statements to the Phillipses at the P.O. Box, and these statements were forwarded to the new mailing address. But mail forwarding only continues for a certain amount of time, and on June 18, 2010, the annual

---

[1] Plaintiff has also sued Jackson National Life Insurance Company, Valley Forge Life Insurance Company, and Southwestern Life Insurance Company. This is of no import, though, for the present matter.

statement Defendant mailed to the Phillipses' P.O. Box was returned as undeliverable mail.

The following year, Defendant mailed another annual statement to the Phillipses' P.O. Box, but it was again returned as undeliverable. On August 12, 2011, Defendant allegedly mailed a letter to the Phillipses' P.O. Box concerning an increased premium on the insurance policy. This letter stated that the premium was required to be paid by September 16, 2011, and this letter was yet again returned as undeliverable.

From 1988 until September 2011, Defendant made automatic withdrawals of the insurance premiums from the Phillipses' checking account. But for whatever reason, Defendant did not withdraw the increased premium for the month of September 2011. Instead, Defendant allegedly sent a letter of termination of the insurance policy for failure to pay the increased premium to the Phillipses' P.O. Box on September 19, 2011. This letter was again returned as undeliverable.

On June 28, 2012, after battling esophageal cancer, Mr. Phillips died. Following his death, Plaintiff attempted to initiate a claim on the insurance policy. It was at this time that she first discovered that the policy had been terminated for failure to pay the increased premium.

Plaintiff then filed this breach of contract and bad faith action in the District Court of Custer County on February 14, 2013. Importantly, Plaintiff's Petition stated that she was seeking "actual and punitive damages, interest and costs, including reasonable attorneys' fees, the sum of which do not exceed the amount required for diversity

jurisdiction pursuant to Section 1332 of Title 28 of the United States Code." Pl.'s Petition, at 9.

After Plaintiff filed her case in state court, Plaintiff and Defendant exchanged a few emails regarding settlement. In these emails, Plaintiff very clearly indicated that she would settle her case for $45,000, the sum of the $35,000 insurance policy and the $10,000 rider on her life. Defendant acknowledged receipt of these emails and countered with relatively lower offers of $2,500 and later $5,000.

Around the same time these emails were being exchanged, Plaintiff sent a letter to Defendant on July 30, 2013, regarding compliance with her discovery requests. In this letter, Plaintiff addressed Defendant's contention regarding the undue burden placed upon it by certain discovery requests:

> In prior conversations, you have suggested that the requested production is unduly burdensome given the amount at issue in this case. First, this argument would lead to the conclusion that only customers with large insurance policies are entitled to discovery of the evidence necessary to prove a "pattern of abusive conduct by [the insurer]" in a bad faith case. Plaintiff's right to prove the essential elements of her claim outweighs any such burden on the defendant. *See id.* Second, Plaintiff has the right to amend her pleadings, including the damages requested, when justice so requires. *See Roth v. Mercy Health Center, Inc.*, 246 P.3d 1079, 1084 (Okla. 2011). Discovery of a pattern and practice of refusing to follow internal procedures when canceling a policy where the insured receives no notice of the cancelation would justify such an amendment to the Petition and would in no way prejudice Defendant.

Doc. No. 14, Ex. 5.

After Defendant received this letter, it removed the case to this Court on August 7, 2013. Plaintiff then filed this Motion to Remand, claiming that Defendant has not proven jurisdictional facts supporting removal. Specifically, Plaintiff claims that Defendant has

not shown that the amount in controversy exceeds $75,000 to support diversity jurisdiction.

Under 28 U.S.C. § 1332(a), in addition to diversity of citizenship, subject matter jurisdiction requires "an amount in controversy in excess of $75,000, exclusive of interest and costs." *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008) (internal quotation marks omitted). In determining whether the amount in controversy exceeds $75,000 in a removed case, the Tenth Circuit has stated:

> The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the *underlying facts* supporting [the] assertion that the amount in controversy exceeds [$75,000]. Moreover, there is a presumption against removal jurisdiction.

*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). (citations omitted). In *McPhail v. Deere & Co.*, the Tenth Circuit clarified that a removing defendant must prove jurisdictional facts by a preponderance of the evidence that the amount in controversy exceeds $75,000 and outlined several methods that may be used to satisfy this burden. *See* 529 F.3d at 954-55. First, the defendant may use an estimate of the potential damages calculated based upon the allegations in the complaint. *Id.* at 955 (citation omitted). Second, "other documentation can provide the basis for determining the amount in controversy." *Id.* at 956 (citations omitted). Finally, "a plaintiff's proposed settlement amount 'is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.'" *Id.* (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).

In arguing that its burden has been met, Defendant heavily relies on Plaintiff's statement in the July 30 letter concerning the possibility of amending her Petition to include "pattern or practice" allegations amongst her claims for damages. According to Defendant, Plaintiff's statement in this letter was essentially Plaintiff's way of notifying Defendant that she would no longer be bound by her initial Petition, in which she stated that the total amount in controversy was $75,000 or less. Defendant further states that had Plaintiff not made this statement concerning her ability to amend, Defendant would have respected Plaintiff's initial statement regarding the amount in controversy being $75,000 or less.

Besides the July 30 letter, Defendant argues that the face of Plaintiff's Petition indicates that the amount in controversy actually exceeds $75,000. Specifically, Defendant asserts that the possibility of a jury awarding bad faith damages to Plaintiff and that Oklahoma law permits punitive damages for the claims in question combine to show that that more than $75,000 is in play in this case.

Despite Defendant's contentions, the Court determines that Defendant has not met its burden to show that jurisdiction in this Court is proper.[2] For starters, Plaintiff's Petition states that she is seeking less than the amount required for diversity jurisdiction to exist. This logically should be given significant weight because it can safely be

---

[2] It is worth mentioning that while the parties agree that *McPhail v. Deere & Co.* sets forth Defendant's burden for showing that the amount in controversy exceeds $75,000, the Tenth Circuit has recognized that under the current removal statute as modified by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), where the plaintiff explicitly states in her complaint that she is seeking less than the requisite amount to support diversity jurisdiction, removal based upon diversity "likely requires a different approach" than the one set forth in *McPhail*. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1246-47 nn.2-3 (10th Cir. 2012). The Tenth Circuit has not since stated what this different approach may be, although it likely will place a heightened burden on the defendant to prove that federal jurisdiction is proper.

assumed that "[P]laintiff's counsel best knows the value of his client's case." *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). It follows that Defendant's argument that the face of Plaintiff's Petition clearly indicates that more than $75,000 is in play in this case is inaccurate.[3] *See id.* at 1095 (holding that no diversity jurisdiction existed on the face of a plaintiff's complaint where the plaintiff's complaint specifically requested an amount of damages less than that required for diversity jurisdiction).

Additionally, Plaintiff's counsel's emails regarding settlement bolster the statement in Plaintiff's Petition concerning the amount in controversy being $75,000 or less. Over the course of several months after filing suit, Plaintiff's counsel offered to settle the dispute for a maximum of $45,000. This includes two different settlement offers either contemporaneously with or after the July 30 letter Defendant so heavily relies upon in arguing that more than $75,000 is in play in this case. This correspondence is the complete opposite of the correspondence the Tenth Circuit relied upon in *McPhail* when it held that the settlement correspondence in that case supported removal jurisdiction. *See* 529 F.3d at 956-57 (noting that the settlement correspondence supported removal jurisdiction where the plaintiff's counsel stated that it may very well be true that the amount in controversy would exceed $75,000, and the discussion of the value of the plaintiff's claim indicated that the plaintiff would be seeking more than $75,000).

Next, the Court is not convinced that, when read in context, Plaintiff's statement in the July 30 letter concerning her ability to amend her complaint is nearly as meaningful

---

[3] In fact, Defendant's argument concerning the face of Plaintiff's Petition contradicts Defendant's assertion that up until the time of the July 30 letter, Defendant planned on remaining in state court. If the Petition so clearly indicated that more than $75,000 was in play, the Court questions why the Defendant waited over five months to attempt to remove the case to this Court.

as Defendant alleges. While Defendant argues that it was essentially Plaintiff's way of notifying Defendant that Plaintiff would be amending her Petition, it reads much more like a factual statement—under Oklahoma law, it is true that Plaintiff likely would have the right to amend her Petition in the scenario she set forth in the letter. *See* Okla. Stat. tit. 12, § 2015(A). Thus, this factual statement cannot fairly be said to place more than $75,000 in play on its own, even though Defendant's Notice of Removal and response brief to this motion stated that Defendant had planned on staying in state court up until the time of the July 30 letter.

In fact, although Defendant strongly argues that its reliance upon this statement is enough to meet its burden, Defendant does not cite any authority concerning the proposition that when the plaintiff has expressly requested $75,000 or less in damages, the possibility of amendment serves as a vehicle for removal to federal court. Although the Tenth Circuit has apparently not addressed this exact issue, the Eleventh Circuit has held that removal is not proper where a plaintiff's complaint requests damages less than the requisite amount for diversity jurisdiction, even when the plaintiff later states that she may amend her complaint and will not sign anything precluding her from amending to seek damages in excess of the requisite amount for diversity jurisdiction. *See Burns*, 31 F.3d at 1094, 1096-97. Instead, the Eleventh Circuit noted that if the possibility of amendment of a complaint were enough for removal to be proper in this scenario, it "would unacceptably broaden removal jurisdiction" and "promote inconsistent application of the removal rule." *Id.* at 1097. Indeed, given that a plaintiff's right to amend her petition under Oklahoma law is fairly broad, using Defendant's argument that

the possibility of amendment satisfies removal jurisdiction would mean that practically any case could find its way into federal court even when, as here, a plaintiff expressly requests $75,000 or less in damages in her petition.

Accordingly, Plaintiff's Motion to Remand is GRANTED. The Clerk is instructed to remand this case to the District Court of Custer County.

IT IS SO ORDERED this 25th day of October, 2013.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE